NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES,<br><br>              Plaintiff,<br><br>v.<br><br>KIRK EADY,<br><br>              Defendant. | Criminal No.: 14-277 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court on a motion for bail pending appeal filed by Defendant pursuant to 18 U.S.C. § 3143(b). The motion is opposed. On November 12, 2015, the Court heard argument on the motion. For the reasons discussed below, Defendant's motion is denied.

## I. BACKGROUND

On January 14, 2014, a Complaint was filed against Defendant charging him with violating 18 U.S.C. §§ 2511(1)(a) and (2) because he allegedly "intentionally intercepted, endeavored to intercept and procured another person to intercept and endeavor to intercept the wire, oral, and electronic communications of others." (Compl. at 1). Defendant was indicted on this charge on May 19, 2014. On March 13, 2015, a jury found Defendant guilty of violating 18 U.S.C. §§ 2511(1)(a) and (2). Defendant was sentenced on September 10, 2015 to 21 months in

prison. This sentence reflected a two-level enhancement for "abuse of trust" pursuant to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 3B1.3. Defendant filed a notice of appeal on September 18, 2015, and the present motion for bail pending appeal on October 30, 2015.

## II. LEGAL STANDARD

Section 3143(b) of the United States Code provides:

> Release or detention pending appeal by the defendant.–(1) . . . the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds--
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--
> (i) reversal,
> (ii) an order for a new trial,
> (iii) a sentence that does not include a term of imprisonment, or
> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.
> . . .

18 U.S.C. § 3143(b)(1). Thus, for release pending appeal to be appropriate, a convicted defendant has the burden of establishing: "(1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released; (2) that the appeal is not for purpose of delay; (3) that the appeal raises a substantial question of law or fact; and (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *United States v. Miller*, 753 F.2d 19, 24 (3d Cir. 1985). The presumption is in favor of post-conviction detention during the pendency of an appeal. *See id.* at 22-23.

The Third Circuit's definition of a substantial question "requires that the issue on appeal be *significant* in addition to being novel, not governed by controlling precedent or fairly doubtful." *United States v. Smith*, 793 F.2d 85, 88 (3d Cir. 1986) (emphasis in original). To be significant, the question must be "fairly debatable." *Id.* at 89. In other words, a defendant "must demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Id.* (internal quotations omitted, emphasis and alteration in original). On the other hand, "an issue that is patently without merit cannot qualify at significant." *Id.*

Finally, the phrase "likely to result in reversal or an order for a new trial" does not "require the district court to predict the probability of reversal [of its decision]." *Miller*, 753 F.2d at 23. Rather, the *Miller* Court held:

> [T]hat language must be read as going to the significance of the substantial issue to the ultimate disposition of the appeal. A question of law or fact may be substantial but may, nonetheless, in the circumstances of a particular case, be considered harmless, to have no prejudicial effect, or to have been insufficiently preserved. A court may find that reversal or a new trial is "likely" only if it concludes that the question is so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial.

*Id.*

### III. DISCUSSION

The Government argues that Defendant is a danger to the community. *See* Gov't Opp'n at 20. This Court disagrees. Defendant has complied with all conditions of his release, and there has been no suggestion that Defendant is presently posing a danger to the community or has

posed such a danger while he has been out on bail pending surrender. The Government's speculative arguments that Defendant may further harass his victims are unpersuasive.

The Government does not argue that the appeal is for the purpose of delay. Therefore, the Court finds that the first and second prongs of the *Miller* test are satisfied and focuses the discussion on the third and fourth prongs, which relate to the presence of a substantial question of law or fact.

Defendant argues that, for purpose of this § 3143(b) motion, the following issues present substantial questions of law: (1) whether the definition of a "party" used by the Court in the jury instructions was in error and/or whether the term "party" is unconstitutionally vague; (2) whether the jury instructions regarding wire communications should have required the jury expressly to find the communication affected interstate commerce; (3) whether the jury instructions failed to contain a proper unanimity instruction; (4) whether the Court improperly permitted Todd Saul to testify as a lay witness; and (5) whether applying a two-level sentencing enhancement for "abuse of trust" was error.

### A.   Definition of "Party"

At trial, Defendant was found guilty by a jury of violating 18 U.S.C. §§ 2511(1)(a) and (2). However, under 18 U.S.C. § 2511 not all interceptions of communications are unlawful. For example, § 2511(2)(d) provides a statutory defense for interceptions where the defendant was a "party" to the communication. At trial, this Court instructed:

> I charge you that it is not, it is not unlawful for a person to intercept a communication when such person is a party to the communication or when one of the parties to the communication has given prior consent to such interception, unless the communication was intercepted for the purposes of committing any criminal or wrongful act in violation of the constitutional laws of the United States or any states.

> A party is an individual who participates with at least one other individual in a communication and whose participation in that communication is known to the other participants in the communication at the time of the communication.

Trial Tr. at 4.83:22-84:8.

Defendant argues that a substantial question of law supporting his motion for bail pending appeal exists because the definition of "party" used by this Court in the jury instruction above was erroneous, and that, furthermore, the statute's failure to define the term "party" renders the statute void for vagueness. *See* Def.'s Mot. at 29 (rule of lenity requires dismissal), 32 (ambiguous statute with two rationale readings), 34 ("unsettled" definition), 40 (void for vagueness). None of these arguments are new. Defendant made them during trial in arguments over the jury instructions (*see* Trial Tr. at 4.55:1-57:13), and after trial in his Rule 29 motion (*see* ECF No. 48-1 (Def.'s Rule 29 Mot.)). In each instance this Court has rejected Mr. Eady's arguments with respect to the meaning of the term "party" as used in the wiretapping statute. *See* ECF No. 54 (Opinion denying Defendant's Rule 29 motion). For purpose of this motion, however, the Court's prior rejections of these arguments is not dispositive of the issue of bail pending appeal. Even if the Court disagrees with Defendant's position, it may nonetheless find bail to be appropriate if it finds the question fairly debatable. *See, e.g., United States v. Beldini*, No. 09-637, ECF No. 116, at 7 (D.N.J. July 30, 2010) (this Court granting bail pending appeal after acknowledging that the issue presented in that case "was a meaty one, with good arguments on both sides").

Here, however, the Court's prior Rule 29 Opinion makes clear that it does not find the "party" definition questions raised by Defendant fairly debatable. The Court—after considering the legislative history of the statute and case law—previously held that "[h]aving considered the

statute, this Court finds that there is no 'grievous ambiguity or uncertainty' in the wiretap statute." *United States v. Eady*, No. 14-277, 2015 WL 1735495, at *2 (quoting *Muscarello v. United States*, 524 U.S. 125, 139 (1998), discussing the rule of lenity). The Court stated: "[I]t is **abundantly clear** from the legislative history that Congress did not intend that a 'party' would be someone like Defendant who surreptitiously gained access to communications in real time and never made his presence known." *Id.* at *3 (emphasis added). The Court further held that "accepting any other definition of 'party' other than the one charged to the jury would render the wiretap provisions of 18 U.S.C. § 2510 *et seq.* unnecessary." *Id.* at *2. For these same reasons, the Court found that "the wiretap statute is not vague and the Court's jury charge on the definition of 'party' was not a novel construction." *Id.* at *4 n.3.

The Court's prior rulings are further supported by the Third Circuit's decision last month in *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125 (3d Cir. 2015). In that case, the Court held that "[i]n the context of the statute, a party to the conversation is one who **takes part in** the conversation." *Id.* at 143 (emphasis added). The Court's jury instruction in this case related to the term "party" is consistent with the *Google* holding. The Court, therefore, holds that the issue of the definition of the term "party" does not raise a substantial question of law sufficient to support Defendant's application for bail pending appeal.

### B. Jury Instruction: Interstate Commerce

Defendant next argues that the Court "failed to charge that [the wire communication] must affect interstate or foreign commerce." Def.'s Mot. at 17. Defendant argues that such a failure was a "constructive amendment" of the indictment that "impermissibly broadened the basis upon which a conviction could be returned." *Id.* at 16 (citing *United States v. McKee*, 506

F.3d 225, 229 (3d Cir. 2007)). "A constructive amendment occurs where a defendant is deprived of his substantial right to be tried only on charges presented in an indictment returned by a grand jury." *United States v. Syme*, 276 F.3d 131, 148 (3d Cir. 2002).

The Court first notes that Defendant did not object to the wire communication jury instruction at trial. *See* Trial Tr. at 4.66:24-67:3. A party's failure to object to a jury instruction as required by Federal Rule of Criminal Procedure 30(d) "precludes appellate review, except as permitted under Rule 52(b)." *United States v. Beldini*, 443 Fed. App'x 709, 714 (3d Cir. 2011). Under Rule 52(b), errors that were "not brought to the court's attention" at trial are reviewed for plain error. *Id.*

For an appellate court to reverse a decision under the plain error standard of Federal Rule of Criminal Procedure 52(b) it must be shown that: (1) there was an "error;" (2) the error was "plain;" (3) the error "affect[ed] substantial rights;" and (4) the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *United States v. Antico*, 275 F.3d 245, 265 (3d Cir. 2001). Additionally, the Third Circuit has stated that "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Albrecht v. Horn*, 485 F.3d 103, 129 (3d Cir. 2007) (finding no plain error in a habeas case). The *Albrecht* court also stated that "an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.*

Here, "Defendant concedes that the plain error framework requires a showing that the error affected the defendant's substantial rights . . .[and] that the error was prejudicial in that it affected the outcome of the District Court proceedings." Def.'s Mot. at 18-19 (internal quotations omitted). Defendant argues, however, that the asserted constructive amendment is an

error that "is as clear as it is obvious." *Id.* at 18. Defendant further argues that while a defendant normally carries the burden of proving plain error, where a court constructively amends an indictment through improper jury instructions, the flawed instruction is presumptively prejudicial. *Id.* at 19 (citing *Syme*, 276 F.3d at 155).

The Government argues that there was no error—plain or otherwise—as wire interceptions necessarily affect interstate commerce, which is why the model jury instructions for wire (versus oral) interceptions omit an express reference to interstate commerce. *See* Gov't Opp'n at 6-7. The model jury instruction related to wire communications provides:

> The second element that the government must prove beyond a reasonable doubt is that the intercepted communication was a "wire communication." A "wire communication" is a communication containing the human voice made in whole or in part through the use of facilities for the transfer of communications by the aid of wires, cables or similar connections at any point between and including the point of origin and the point of reception.

Sand, Siffert, Model Federal Jury Instructions (Criminal), Instruction 65-4 (wire communication). The Court gave this precise instruction. The Court instructed:

> The second element is wire communication. The Government must prove beyond a reasonable doubt that the intercepted communication was a wire communication, a quote, unquote, wire communication is a communication containing the human voice made in whole or in part through the use of facilities for the transfer of communications by the aid of wires, cables or similar connections, or at any point between and including the point of origin and the point of reception. A land line, a cellular telephone communication, or example, are wire communications.

Trial Tr. at 4.83:1-10.

On the other hand, the model jury instruction for oral communications requires that the Government also prove a "federal nexus." *See* Sand, Siffert, Model Federal Jury Instructions (Criminal), Instruction 65-5 (oral communication). Comments to these instructions note that

"most cases involving oral communications are charged under section 2511(1)(b), which has an explicit interstate commerce element." *See id.* On the other hand, "[w]hile section 2511(1)(a) [the statute involved here] includes no language requiring an element establishing federal jurisdiction, the constitutionality of this provision with respect to wire and electronic communications is clear because those communications invariably affect interstate commerce." *See id.*

The Court thus finds that there is no fairly debatable question as to whether the jury instruction should have included an express requirement that the jury find that the wire communications affected interstate commerce.

### C.    Jury Instruction: Requirement of Unanimity

Defendant next argues that "the jury charge was fatally flawed as there was no unanimity instruction, requiring jurors to agree on the offense conduct defendant committed, and there is no basis to determine the method or manner by which the jury concluded defendant had violated 18 U.S.C. § 2511(1)(a)." Def.'s Mot. at 20. Specifically, Defendant argues that he was charged in the indictment using the conjunctive ("and"), but that the jury was charged using the disjunctive ("or") and, as a result, the jury was not required to unanimously agree on the specific offense conduct committed. *Id.* at 23-24.

The Court generally charged the jury as follows:

> Whatever your verdict turns out to be, it will have to be unanimous. That means that all of you will have to agree on the verdict, or there will be no verdict.

Trial Tr. 4.71:18-20. The Court further instructed:

> To return a guilty verdict, therefore, you must unanimously agree that the defendant intercepted or endeavored to intercept or procured another person to intercept one of those communications.

*Id.* at 4.82:21-25. With respect to the disjunctive versus conjunctive language, the Court instructed:

> [E]ven though the indictment uses the word 'and,' the Government need not prove that the defendant did all of those things. It is sufficient for the Government to prove that the defendant did one of the things charged in that particular conduct. In other words, you should treat the conjunctive 'and' as it appears in many places in the indictment as being the disjunctive 'or.' Okay? Therefore, it is enough for the Government to prove that the defendant intentionally intercepted or endeavored to intercept or procured another person to intercept or endeavored to intercept the wire communications of others.

*Id.* at 4.91:11-21. In its final instructions to the jury, the Court reiterated the requirement of unanimity. *See id.* at 4.135:20-25, 4.136:22-137:3, 4.137:13-17, 4.139:18-23.

Defendant did not object to these charges. *See id.* at 4.66:24-67:3. Thus, any review of this issue also will be subject to plain error review.

Defendant argues that the Third Circuit requires that, "[w]here, as occurred herein, the offense charged has three different ways by which it may be violated, each of which has a different underlying factual basis, the jury must be charged that the precondition to return of a valid guilty verdict is that the jury must be unanimous as to the particular way(s) the defendant violated the statute at issue." Def.'s Mot. at 20-21 (citing *United States v. Beros*, 833 F.2d 455 (3d Cir. 1987)). The Government, on the other hand, argues that *Beros* is an exception, not the rule. *See* Gov't Opp'n at 9-10. The Government argues that the general rule is that "a case may be charged in the conjunctive where, as here, there is more than one way of violating the statute, and then proven by the government and instructed by the Court in the disjunctive." *Id.* at 9

(citing *United States v. Johnson*, 452 Fed. App'x 219, 225 (3d Cir. 2011) ("We have held that while an indictment employs the conjunctive, jury instructions may employ the disjunctive where, as here, the statute employs the disjunctive.") (not for publication); *United States v. Cusumano*, 943 F.2d 305, 311 (3d Cir. 1991) ("Where the relevant statute lists alternative means of violation, [t]he general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any of the acts charged. This rule obviously extends to a trial court's jury instructions in the disjunctive in the context of a conjunctively worded indictment.") (internal quotations and citations omitted)).

The case cited by Defendant, *Beros*, is consistent with those cited by the Government. The Third Circuit in *Beros* recognized that "[i]n the routine case, a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even where an indictment alleges numerous factual bases for criminal liability." 833 F.2d at 460. The *Beros* Court made clear that more specific instructions are only required "where the complexity of the case, or other factors, creates the potential that the jury will be confused." *Id.* The Court agrees with the Government that it is not fairly debatable that this is such a case. In this case, while there may be different ways the statute may be violated, there was only one factual scenario at issue. This is a not a case where multiple fact patterns or theories were being presented which could have caused jury confusion. The manner in which Defendant intercepted the communications was not a real issue of dispute at trial. Defendant's primary issue of dispute was whether he was considered a "party" to the communications. The Court, therefore, finds that this also is not a sufficient ground supporting bail pending appeal.

### D. Mr. Saul's Testimony as a Lay Witness

Defendant next argues that the Court committed reversible error because it denied Defendant's motion that Mr. Saul, who testified on behalf of the Government, be qualified as an expert before testifying. *See* Def.'s Mot. at 26. Defendant argues that Saul improperly opined as a lay witness on the structure, operability, features and methodology of the Evil Operator software. *Id.* The Court finds that it need not resolve whether Mr. Saul improperly testified as a lay witness. As addressed at the hearing, and acknowledged by Defendant, even if such testimony was in error, it would not be reversible error (or serve as a basis for bail pending appeal) if it was harmless.

During trial Mr. Saul testified about how a customer could use the Evil Operator program to surreptitiously record the telephone conversations of others without those individuals knowing that the customer was listening. *See* Trial Tr. at 2.65:2-68:22. In responding to Defendant's objections to this testimony at trial, the Court asked Defendant's counsel if the information provided by Mr. Saul was "even disputed." *Id.* at 2.63:13-14. Defendant's counsel responded that it was irrelevant whether it was disputed. *Id.* at 2.63:15-18. In fact, this information was not disputed at trial. Additionally, Latonya Freeman testified that Defendant Eady explained to her how he used the program to make the recordings. *See id.* 2.132:9-136:16. Defendant's counsel acknowledged this at the November 12 hearing on this motion, but nevertheless argued that there was a debatable issue as to how Mr. Saul's testimony may have affected the jury, stating that it may have "bolstered their perception of what Mr. Eady did." The Court disagrees with Defendant that this supports his present motion. If Mr. Saul's testimony was in error, at most, it

was harmless as his testimony was not in dispute and was duplicative of other evidence already in the record, including the Defendant's own description of how the program operated.

### E. "Abuse of Trust" Enhancement

Defendant was sentenced using an offense level of 14 with a related Guidelines range of 15-21 months. This Court sentenced Defendant to the top of the range, 21 months. The offense level of 14 was reached after applying a two-level "abuse of trust" enhancement. *See* ECF No. 60, Sentencing Hr'g Tr. at 5:6-6:8, 7:1-6; Def.'s Mot. at 36. Defendant argues that this enhancement was plainly improper given the facts of the case. Def.'s Mot. at 37.

The Government argues that the enhancement was proper because Defendant used his position of authority to obtain the personal information he used with the Evil Operator program. *See* Gov't Opp'n at 19-20. The Government also argues that, even if the enhancement was improper, any alleged error is not a proper basis for this motion as the statute governing bail on appeal requires that the error result either in no imprisonment or a sentence that would be reduced to less time than the time served plus the expected duration of the appeals process. *Id.* at 18; 18 U.S.C. § 3143(b)(1)(B)(iii), (iv). The Court agrees.

Here, even if the enhancement was in error, the result would be to reduce the offense level from a 14 to a 12, resulting in a Guidelines range of 10 to 16 months versus 15 to 21 months. *See* Gov't Opp'n at 19. Defendant would not be eligible for probation even with the reduced offense level, he has yet to serve any time, and he has not argued that his appeal could not be resolved within the shorter time frame. Thus, this argument cannot serve as a basis for bail pending appeal.

## IV. STAY PENDING APPEAL OF THIS DECISION

At the hearing on the present motion, Defendant requested that, if this Court denies bail pending appeal, the decision at least be stayed pending an appeal of this decision to the Third Circuit. The Government, on the other hand, argued that, if the Court denies Defendant's motion, Mr. Eady be ordered to surrender very soon. The Government noted that Defendant was sentenced some time ago and has had ample time to put his affairs in order. The Court agrees with the Government that any further stay is not warranted and that Mr. Eady must surrender as soon as possible.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to stay commencement of sentence pending appeal (ECF No. 64) is denied. An appropriate Order accompanies this Opinion.

DATED: December 14, 2015

                                              JOSE L. LINARES
                                              UNITED STATES DISTRICT JUDGE